SUNBURST OIL AND REFINING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 45979.   Promulgated June 23, 1931.

*George E. Hurd, Esq., H. C. Hall, Esq., Homer G. Murphy, Esq.,* and *William B. Finlay, C. P. A.,* for the petitioner.
*J. E. McFarland, Esq.,* for the respondent.

830

OPINION.

BLACK: No evidence was introduced to sustain petitioner's alleged errors numbered (f), (i) and (j). These relate to claimed deductions for donations of $145, interest added to income in the sum of $983.62, and improper application of net loss to the year 1926. The action of the respondent relative to these items is approved. We shall discuss petitioner's remaining assignments of error in their order.

(a) and (b). In his determination of the profit realized by the petitioner on the sale of certain oil and gas leases acquired by petitioner from the Stevenson Consolidated Oil Company in prior years, the respondent proceeded upon the theory that immediately after the transfers of the leases were made to the petitioner the transferor, Stevenson Company, was in control of petitioner, owning 80 per centum of petitioner's stock, and that under sections 203 and 204, Revenue Act of 1926, and particularly 204(a)(8), the cost basis of these leases must be their cost to the transferor. The facts show that the Stevenson Company was not the owner of 80 per centum of petitioner's stock at the time of the assignment of these leases to it, nor at any time subsequent thereto. It follows that the method

used by the respondent in arriving at his determination was incorrect. It seems that the respondent disregarded the $194,000 stock consideration entirely and based his estimate of cost on the cash consideration of $50,000 as the cost of all the leases purchased from the Stevenson Company. The amount which respondent determined as the cost of the leases in question has already been given in our preliminary statement preceding the findings of fact. This amount. was subtracted from the cost basis as used by petitioner, resulting in an additional profit of $29,092.80, which was added to petitioner's income. We hold this action of the respondent is not justified. Petitioner proved its cost of the leases and respondent's action in adding $29,092.80 to petitioner's income because of disallowed cost of these leases was error.

(c). Petitioner next complains of respondent's refusal to allow $27,670.92 as expenses incurred by it under certain contracts which it had with producing oil companies, which were engaged in developing its leases. None of this deduction of $27,670.92 was paid by petitioner in 1926, and under the terms of the various agreements under which the expenditures were made by the producing companies, none of this deduction was incurred by petitioner as a liability in 1926. The contracts provided, " Said party of the second part shall be reimbursed by said party of the first part solely from the first party's proportion of the oil and gas produced and sold from said land." Respondent held that said $27,670.92, not having been incurred and there being no definite liability of payment, the amount could not for income-tax purposes be accrued, " Having been neither paid, incurred, or properly accrued as a liability in 1926, the amount, under the law, is not an allowable deduction in 1926, and is therefore disallowed," said respondent. We approve respondent's disallowance of this item as a proper deduction. Contingent liabilities are not accruable for income-tax purposes. Petitioner was only liable for this $27,670.92 if and when sufficient oil was produced from the wells to pay it.

An applicable case to the facts in the instant case, we think, is that of *S. Naitove & Co.* v. *Commissioner*, 32 Fed. (2d) 949, in which the taxpayer sought to accrue contingent liabilities in a year before they became fixed. In disallowing the deduction, the District of Columbia Court of Appeals said:

It will be observed that under the contract as set forth in the resolution all sums to which the employees might become entitled during the period of five years should remain in the business, and should be subject to pro rata deductions in the event of losses incurred in the business during the 5-year period. Appellant paid out nothing. It took nothing from its business. The entry on the books represented only a possible future liability. In other words, the profits and losses credited and charged to the account of each of the employees

should be accounted at the end of the 5-year period, and if the credits exceed the losses the excess would represent the amount to which the employee would be entitled. On the other hand, if the losses exceeded the credits, the employee would be entitled to nothing. It follows that the events which were to determine and fix appellant's liability to its employees could not occur until the expiration of five years; and, by the terms of the agreement, if an employee was discharged or left the employ during the period of five years, he should take nothing under the agreement, whether the credits were in his favor or not. It follows, therefore, that the events which were to determine and fix appellant's liability did not occur in the year 1919, and could not occur so as to admit of a final determination until the end of the 5-year period, at which time the definitely fixed and accrued expense could be deducted and credit taken on its tax in the current year.

See also *Block & Kohner* v. *United States*, 37 Fed. (2d) 877; *Fuller Brush Co.*, 8 B. T. A. 855; *Southland Coal Co.*, 16 B. T. A. 50; *Field & Start*, 17 B. T. A. 1206; *Hallack & Howard Lumber Co.*, 18 B. T. A. 954; *Horn & Hardart Baking Co.*, 19 B. T. A. 704; *Reuben H. Donnelley Corporation*, 22 B. T. A. 175; *Atlas Mixed Motor Co.*, 23 B. T. A. 245.

(d). In 1924, prior to the reorganization and consolidation of several corporations into the petitioner, the Sunburst Refining Company, one of the merged corporations, made a contract with the Stevenson Company for the purchase of 500 to 3,000 barrels of crude oil daily for a period of nine years, at the posted market price plus a bonus of 10 cents a barrel, payable in stock of the corporation. Sunburst Refining Company sold its plant and business to the petitioner, which succeeded to the obligations under this crude oil contract to take the specified amount of oil at the designated price. Subsequently it acquired the contract from the Stevenson Company as part of a trade involving 637,500 shares of its capital stock and the conveyance to it of large blocks of shares of stock in other corporations. It canceled the contract and allocated on its books 5,000 shares of stock as the cost thereof and claims a loss. We see no basis for a deduction of a loss.

The transaction was strictly a capital one and petitioner has offered no evidence showing the loss which it claims. If it be the theory of petitioner that the contract which it had with the Stevenson Consolidated Oil Company for the purchase of crude oil was a burdensome one and that petitioner was justified in paying the Stevenson Company $5,000 to get rid of the contract and in charging same as an ordinary and necessary business expense, that was not done, and we are not called upon to decide that question. Besides, we have no evidence before us that this contract which petitioner had with the Stevenson Company for the purchase of crude oil was a burdensome one. In this state of facts we approve respondent's action in disallowing this claimed loss of $5,000.

(e). Petitioner's assignment of error (e) must be disallowed. We hold with the respondent that this item was a capital expenditure and the fact that the well was not entirely completed when the lease was retransferred is immaterial. It added to the value of the lease, as it was completed at small expense after petitioner secured repossession of the lease. *George W. Wetherbee*, 20 B. T. A. 35; *Old Farmers Oil Co.*, 12 B. T. A. 203; *Consolidated Mutual Oil Co.*, 2 B. T. A. 1067.

(g). Petitioner's assignment of error (g) must be disallowed. Petitioner's effort to adjust in 1926 an error which occurred in 1925 was erroneous. The mistake should have been corrected in the year in which made, viz., 1925.

(h). The last item for consideration is petitioner's assignment of error (h), wherein it contends respondent erred in disallowing an expenditure of $2,092.50 for a deed of correction to perfect its title to its refinery property. We have uniformly held that such expenditures are capital expenditures, and are not deductible as ordinary and necessary business expenses. Such expenses are added to the cost of the property. The fact that the amount was paid under pressure does not alter its character. *George W. Wetherbee*, 20 B. T. A. 35.

*Decision will be entered under Rule 50.*